IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR No. 1:24-cr-00233-RC-1

v.
                                  Washington, D.C.
CHRISTINA KELSO,                  Thursday, October 17, 2024
                                  10:30 a.m.
                Defendant.
- - - - - - - - - - - - - - - - x
_____

TRANSCRIPT OF FARETTA HEARING
HELD BEFORE THE HONORABLE RUDOLPH CONTRERAS
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:    Anthony W. Mariano, Esq.
                          U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          601 D Street, NW
                          Washington, DC 20530
                          (202) 476-0319


For the Defendant:        Christina Kelso, Pro Se


Also Present:             Carmen D. Hernandez, Esq.
                          7166 Mink Hollow Road
                          Highland, MD 20777
                          (240) 472-3391


Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
                          U.S. Courthouse, Room 6722
                          333 Constitution Avenue, NW
                          Washington, DC 20001
                          (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1                    **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  This is Criminal Action 24-233,

3     United States v. Christina Kelso.

4              Parties, please state your appearances for the

5     record.

6              MR. MARIANO:  Good morning, Your Honor.  Anthony

7     Mariano for the United States.

8              THE COURT:  Good morning.

9              MS. HERNANDEZ:  Good morning, Your Honor.  Carmen

10    Hernandez.

11             THE COURT:  Good morning.

12             Good morning, Ms. Kelso.

13             THE DEFENDANT:  Good rising.

14             THE COURT:  So Ms. Kelso, when we last spoke, you

15    indicated that you were going to submit some stuff from

16    the -- to the Court.  I didn't -- I haven't seen anything.

17    Did you send anything?

18             THE DEFENDANT:  Not yet.

19             THE COURT:  Okay.

20             THE DEFENDANT:  I just wanted to make sure that I

21    wasn't represented by Carmen Hernandez before I sent it.

22             THE COURT:  Okay.  So I gather from that comment

23    you still want to go forward in representing yourself.  Is

24    that right?

25             THE DEFENDANT:  (Inaudible.)

1          THE COURT:  I'm sorry.  I didn't hear you,

2   Ms. Kelso.

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Okay.  All right.  So there's a

5   process I need to go through in order to make sure that

6   you're making that decision knowingly, voluntarily, and

7   intelligently.  So I need to ask you a series of questions

8   to make that determination.  So let's start with that

9   process.

10          So you're before the Court because you have been

11   charged in a criminal superseding indictment with multiple

12   counts arising from your alleged actions during the attack

13   on the Capitol on January 6th, 2021.  I understand that you

14   wish to waive your right to assistance of counsel and,

15   instead, you wish to exercise your constitutional right to

16   represent yourself.  So before accepting your waiver of

17   counsel, Ms. Kelso, and before finding that you may

18   represent yourself without counsel, I have to ask you some

19   questions to be certain that this decision is being made

20   knowingly, voluntarily, and with a full appreciation and

21   understanding of the consequences.  So as part of the

22   process, you have to answer these questions under oath.  So

23   we're going to swear you in.

24          THE DEPUTY CLERK:  Ms. Kelso, I'm sorry that you

25   can't see me, but please raise your right hand.

1          Do you solemnly affirm that the answers you're

2     about to give today in this proceeding will be the truth,

3     the whole truth, and nothing but the truth?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  So the next series of questions

6     are ones that judges have to ask whenever we discuss issues

7     of this nature relating to waiver of constitutional rights

8     to make sure that there's nothing that influences your state

9     of mind in terms of you being clear-minded.  So Ms. Kelso,

10    are you presently under the influence of alcohol or

11    narcotics?

12         THE DEFENDANT:  No.

13         THE COURT:  Okay.  Have you ever been treated for

14    addiction to narcotic drugs or alcohol?

15         THE DEFENDANT:  No.

16         THE COURT:  Okay.  Have you ever been treated for

17    emotional or psychological problems?

18         THE DEFENDANT:  No.

19         THE COURT:  Okay.  How far did you go in school?

20         THE DEFENDANT:  I graduated with a bachelor's --

21         THE COURT:  Okay.

22         THE DEFENDANT:  -- degree.

23         THE COURT:  All right.  Do you have any legal

24    training?

25         THE DEFENDANT:  No, but I was a philosophy

1 major --

2     THE COURT:  Okay.

3     THE DEFENDANT:  -- which -- somewhat good

4 training, but --

5     THE COURT:  Okay.  I'm not sure everyone would

6 agree with that, but I -- it's important that you are an

7 educated woman.

8     Have you ever represented yourself in court before

9 either in a civil or a criminal action?

10     THE DEFENDANT:  I have a couple of times, yes.

11     THE COURT:  Okay.  Tell me very briefly the nature

12 of those.

13     THE DEFENDANT:  So the first time, it was -- I was

14 arrested in Yuma, Arizona.  They -- it was -- basically, I

15 failed to identify myself.  I had declined to give my name

16 and date of birth.  I hadn't committed any crime.  So it was

17 an illegal arrest.  I spent the day in jail, but

18 eventually -- and I went to court.  When I got back to

19 California -- they allowed me to leave the state -- they

20 eventually dismissed the case, and I think they did it with

21 prejudice.  Does that mean they can go back, sort of, if

22 they want to?

23     THE COURT:  With -- no, without prejudice -- yeah,

24 without prejudice is -- it -- they can go back.  But

25 regardless, so you represented yourself in that matter?

1       THE DEFENDANT:  I did, yes.

2       THE COURT:  Okay.  Tell me briefly why you want to

3  represent yourself in this case.

4       THE DEFENDANT:  You know, I just don't feel that

5  my counsel has been responsive to some of my questions.  So

6  I -- and I'm also, just as a general point of the legal

7  scheme right now, not -- I'm not confident in our -- like,

8  the -- our justice -- the -- our -- what do I call it, you

9  know -- that the Justice Department is stressed to begin

10  with.  So I feel very strongly that probably all three of

11  you -- it's, like, three against one.  And so I would just

12  prefer to make it a clean fight and for me to represent

13  myself, you know?  It's -- like, it's obviously not a fair

14  fight, but it's really not fair if people are pretending to

15  be my advocates when I just don't trust that that's the

16  case.  So --

17       THE COURT:  Okay.  So just so I'm clear as to what

18  your concerns are, at the beginning you started with talking

19  about concerns you had about Ms. Hernandez, but then you

20  went on to some more general concerns about the criminal

21  justice system.  So I want to make sure that what you want

22  is to represent yourself rather than just wanting a

23  different defense counsel.

24       THE DEFENDANT:  I don't believe that -- pardon

25  me -- that a defense is possible.  Like, I don't think

1    anyone would be able to represent me because of the way the

2    court is structured, you know?  So yeah, I don't want a

3    private lawyer.  I don't want a public defender.  I just

4    would prefer to represent myself.  Like, I'm going to speak

5    for myself better than anyone else.  And I didn't, you

6    know -- partly, it's a trust issue.  I just -- I don't have

7    the -- I don't feel like I can trust anyone who's got, like,

8    a Bar card; right?  So that's just where I'm at.

9              THE COURT:  Okay.

10              THE DEFENDANT:  I, you know -- and I've looked at

11    many other cases and, you know, we all know how they've

12    gone.  So yeah, it's -- it would just be far preferable for

13    me to be able to represent myself and, you know, that is my

14    right under the Constitution, and clearly I -- I mean, I

15    don't even know if -- what rights we have left, but that is

16    one.  I would like that one.

17              THE COURT:  Okay.  So I just want to make sure --

18    and it sounds like you understand this -- but I want to make

19    sure that you understand that you have a constitutional

20    right to assistance of counsel regardless of whether or not

21    you can afford an attorney.  You understand that right?

22              THE DEFENDANT:  I do comprehend that, but I also

23    have a constitutional right to represent myself.

24              THE COURT:  Right.  No, I understand that, and

25    that's what we're getting at today.  So we'll go through

1    that, as well.  But I want to make sure you understand that

2    you have the right to a -- have a lawyer appointed to you,

3    regardless of whether or not you can pay.  You understand

4    that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Okay.  All right.  So we're going

7    to -- I'm going to go through the counts you're facing just

8    so that you have a good appreciation of what the stakes are.

9              So in Count 1, you understand you're charged with

10   conspiracy to impede or injure officers, in violation of 18

11   U.S.C. 372?  Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Okay.  And that the maximum penalty

14   for that offense is six years in prison.  You understand

15   that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Okay.  And do you further understand

18   that the maximum fine for that offense is $250,000?  You

19   understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And then with respect to Count 2, you

22   further understand that you're charged with a count of civil

23   disorder, in violation of 18 U.S.C. 231(a)(3)?  You

24   understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And that the maximum fine for that

2    offense -- rather, the maximum penalty for that offense is

3    five years in prison.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  And that the maximum fine for

6    that one is $250,000, as well.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And then for Counts 3 and 4, do

9    you understand that for those two separate offenses, you're

10   charged first with entering and remaining in a restricted

11   building or grounds; and the second one is disorderly and

12   disruptive conduct in a restricted building and grounds, in

13   violation of 18 U.S.C. 1752 Sections (a)(1) and (a)(2),

14   respectively.  You understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.  And the maximum penalty for

17   each of those offenses is one year in prison.  Do you

18   understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  And do you further understand

21   that the maximum fine for each of those offenses is

22   $100,000?  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.  And then with respect to Count

25   5, do you further understand that you're charged with one

1   count of disorderly conduct in a Capitol building or

2   grounds, in violation of 40 U.S.C. Section 5104(e)(2)(D)?

3   Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Okay.  And the maximum penalty for

6   that offense is six months in prison.  Do you understand

7   that?

8             THE DEFENDANT:  Mm-hmm.  Yes.

9             THE COURT:  Okay.  And that the maximum fine for

10  that one is $5,000.  Do you understand that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Okay.  Do you further understand that

13  if you're convicted of these offenses -- one or more of

14  them -- you would be required to pay special assessments

15  that could add up to a total of a few hundred dollars?  Do

16  you understand that?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Okay.  Do you further understand that

19  if convicted of these offenses, you would be subject to a

20  term of supervised release of -- not to exceed three years?

21  Do you understand that?

22            THE DEFENDANT:  Yes.

23            THE COURT:  And with respect to supervised

24  release, what that means is that if you are sent to prison,

25  then you -- after release, you'll be subject to certain

1   terms and conditions with which you must comply, and if you

2   violate those terms and conditions, you can be sent back to

3   prison for an additional period of time.  Do you understand

4   how supervised release works?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Okay.  Do you understand that if

7   you're found guilty of more than one of these crimes, the

8   Court can order that the sentences be served consecutively?

9   That means one after the other.  You understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So if you were found guilty of all of

12  these offenses and they -- and I were to order that the

13  terms be served consecutively, that would add up to a bunch

14  of years.  Many, many years.  You understand that?

15          THE DEFENDANT:  Thirteen-and-a-half years.  Yes.

16          THE COURT:  Okay.  And also, the fines can be

17  imposed cumulatively.  So that would end up being hundreds

18  of thousands of dollars.  Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay.  Do you understand that there

21  are advisory sentencing guidelines that may have an effect

22  on your sentence if you are found guilty?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  And that your attorney can help

25  you determine what the advisory guidelines range could be if

1    you were found guilty of one or more of these offenses.  Do

2    you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  Do you understand that a lawyer

5    would be able to help you understand fully what the elements

6    of each of these crimes are and would be able to help you

7    understand whether or not the Government has met its burden

8    to prove each of these elements?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  Do you also understand that a

11   lawyer would be able to help you identify possible defenses

12   to these crimes and would be able to help you decide whether

13   to raise these defenses?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Okay.  Do you understand that a lawyer

16   would be able to help you file any motions that are

17   necessary to your defense and would be sure that the motions

18   comply with the federal and local rules of procedure?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  Do you understand that a lawyer

21   would be familiar with the rules of discovery and would be

22   able to help you ensure that you received all of the

23   information from the Government to which you are entitled by

24   law?  Do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Are you familiar with the Federal

2     Rules of Evidence?

3          THE DEFENDANT:  I don't know.

4          THE COURT:  Okay.  Do you understand that the

5     Federal Rules of Evidence govern what evidence may or may

6     not be introduced at trial and in that -- representing

7     yourself you have to abide by those rules?  Do you

8     understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that a lawyer would

11     be familiar with the Rules of Evidence and would be able to

12     present your case or cross-examine the Government's

13     witnesses in compliance with those rules?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  Are you familiar with the

16     Federal Rules of Criminal Procedure?

17          THE DEFENDANT:  No.

18          THE COURT:  No?  Okay.  And so the same sort of

19     thing.  Do you understand that those rules govern the way a

20     criminal action is tried in federal court?  Do you

21     understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  Do you understand that if you

24     choose to proceed without a lawyer, you nevertheless will be

25     required to follow the same rules of discovery, the same

1    rules of procedure, and the same Rules of Evidence that

2    apply to all attorneys who practice here?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Okay.  Do you understand that if you

5    represent yourself, you will be on your own and I will not

6    be able to offer you guidance on what those rules require?

7                THE DEFENDANT:  Yes.

8                THE COURT:  All right.  Do you understand that you

9    may have rights under the Fourth, Fifth, and Sixth

10   Amendments to the Constitution to ask this Court to suppress

11   evidence that the Government may seek to use against you at

12   trial?

13               THE DEFENDANT:  Yes.

14               THE COURT:  All right.  Do you understand that a

15   lawyer would be able to help you make the decision about

16   whether to waive your Fifth Amendment right not to take the

17   stand and testify?  Do you understand that?

18               THE DEFENDANT:  Yes.

19               THE COURT:  All right.  Do you understand that a

20   lawyer would be able to help you exercise your

21   constitutional right to confront the Government's witnesses

22   by cross-examining them?

23               THE DEFENDANT:  Yes.

24               THE COURT:  Do you understand that if you choose

25   to proceed without a lawyer and you make mistakes during

```
 1   your representation of yourself, you will not be able to
 2   successfully appeal your conviction on the grounds that you
 3   made those mistakes?  Do you understand that?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  Do you understand that a lawyer would
 6   be able to help you select jurors from the juror panel by
 7   asking them questions and using the lawyer's trial
 8   experience to predict how those jurors might behave?  Do you
 9   understand that?
10            THE DEFENDANT:  Yes.
11            THE COURT:  Do you understand that you have a
12   right to a certain number of what's referred to as
13   peremptory strikes?  Meaning, that you can request that some
14   potential jurors be stricken from the pool and that a lawyer
15   would be able to help you make a decision about which jurors
16   to strike.  Do you understand that?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Okay.  Do you understand that if you
19   had a lawyer, she would be able to help you decide whether
20   to make an opening statement on your behalf and she could
21   make that statement, explaining to the jury what you expect
22   the evidence to show?  Do you understand that?
23            THE DEFENDANT:  Yes.
24            THE COURT:  Do you further understand that the
25   Government has to -- has the right to make such an opening
```

1    statement and the Government will have the legal knowledge

2    and experience of attorneys like Mr. Mariano?  Do you

3    understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that if you had a

6    lawyer, she would be able to help you decide whether to make

7    a closing argument on your behalf and she would be able to

8    make that argument, explaining to the jury what you believe

9    the evidence shows?  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you further understand that the

12   Government will also have the right to make such a closing

13   argument and the Government will have the legal knowledge

14   and experience of attorneys like Mr. Mariano to help them

15   make those arguments?  Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand that if you had a

18   lawyer, she would be able to help you make strategic

19   decisions about your defense?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  Do you understand that at

22   the close of trial, I will give a series of instructions to

23   the jury that will explain the law to them and that a lawyer

24   would be able to help you object to certain proposed

25   instructions or propose other instructions in accordance

1    with your interests?  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  Now, in light of the

4    penalty that you might suffer if you are found guilty and in

5    light of all difficulties of representing yourself, do you

6    still desire to represent yourself and to give up your right

7    to be represented by a lawyer?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.  Do you have any questions at

10   all about what I have discussed with you about the

11   challenges and dangers of representing yourself at trial?

12             THE DEFENDANT:  No.

13             THE COURT:  No?  Okay.

14             So I must tell you that in my opinion, you would

15   be much better off defended by trained lawyers like

16   Ms. Hernandez or someone else that I might appoint than you

17   can be by yourself.  I think it is unwise of you to try to

18   represent yourself.  You are not familiar with the law, with

19   court procedure, or with the Rules of Evidence.  A trial in

20   federal court is difficult for even an experienced attorney.

21   And if you represent yourself, you will be at an extreme

22   disadvantage.  I would strongly urge you not to try to

23   represent yourself, but as you understand, you have a

24   constitutional right to do so, if you wish.

25             I must also tell you that if you do decide to

1    represent yourself, once I set a trial date, I will not

2    continue or postpone that trial date just because you tell

3    me you're not ready.  Do you understand all of that?

4             THE DEFENDANT:  Yes, and I thought we had a trial

5    date set on the calendar.

6             THE COURT:  I don't recall setting one.  Does

7    counsel --

8             THE DEFENDANT:  For March.

9             THE COURT:  March?

10            THE DEFENDANT:  March 31st, 2025.

11            MR. MARIANO:  I don't believe so, Your Honor.  I

12   think you had said you had availability at the end of March,

13   but we hadn't actually set a date.

14            THE COURT:  Okay.  All right.  So I don't think we

15   have set a date.

16            THE DEFENDANT:  Okay.  Well, I had written down

17   that --

18            THE COURT:  Okay.

19            THE DEFENDANT:  -- the date.

20            THE COURT:  All right.  So Ms. Kelso, has anyone

21   promised you anything in return for your decision to proceed

22   without a lawyer?

23            THE DEFENDANT:  No.

24            THE COURT:  No?  Has anyone put any pressure on

25   you or threatened you in any way into making that decision?

1          THE DEFENDANT:  No.

2          THE COURT:  No?  So this decision is completely

3    voluntary on your part?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Now that I have explained to

6    you the penalties that you face and the dangers and

7    disadvantages of proceeding without an attorney and have

8    advised you that I will not grant a continuance of the

9    trial, do you wish to represent yourself and give up your

10   constitutional right to a lawyer?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  So given all of the

13   defendant's answers to my questions that I -- she's

14   articulately and unmistakably asserted her Sixth Amendment

15   right to represent herself, I find that you have knowingly,

16   intelligently, and voluntarily waived your right to counsel

17   and that you understand the dangers and disadvantages of

18   proceeding on your own and the risk of penalty that you

19   face.  I will, therefore, permit you to represent yourself.

20         So what I'm going to do is I'm going to appoint

21   someone to serve as standby counsel that can help you with

22   certain routine matters such as how to get things filed and

23   answer those sorts of questions but not serve as your

24   attorney.  So what I want to ask you is, do you want

25   Ms. Hernandez -- which you already have somewhat of a

1    relationship with -- to serve as that standby attorney --

2    certainly, she's dealt with a lot of cases in federal

3    court -- or would you prefer that I appoint someone else to

4    serve as standby counsel?

5            THE DEFENDANT:  It doesn't matter to me.

6            THE COURT:  Okay.

7            THE DEFENDANT:  I mean, I don't want anything to

8    interfere with my being able to file my own motions and

9    such.  So --

10            THE COURT:  Okay.

11            THE DEFENDANT:  -- as long -- (inaudible.)

12            THE COURT:  Yeah, that person will not interfere.

13    They're just there as a convenience for both yourself and

14    the Court that things get done the way they're supposed to

15    get done so that, you know -- for example, this thing you

16    want to file, to make sure that you know how to get those

17    sorts of things done.  It's not an auxiliary attorney.  So

18    I'm going to appoint Ms. Hernandez as standby counsel for

19    you.  You will be able to control the organization and

20    content of your defense, to make motions, to argue points of

21    law, to participate in jury selection, to question

22    witnesses, and to address the Court and jury when

23    appropriate.  Ms. Hernandez will simply be available to

24    assist you with basic courthouse and courtroom mechanics and

25    with routine clerical or procedural matters so that I need

```
1   not explain basic rules of courtroom protocol throughout the

2   trial.  You do not have a right, however, to a, sort of,

3   hybrid representation, which it seems like you don't want

4   regardless, but I have to understand -- I have to have you

5   understand that you will -- are not entitled to a hybrid

6   representation by which you represent yourself and

7   Ms. Hernandez also represents you.  So her appointment as

8   standby counsel is simply designed to keep the case and the

9   trial moving smoothly.  Do you understand all of that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  Now, the one hitch is in these

12  January 6th cases, a good deal of the discovery is

13  confidential.  So they will not turn over -- the Government

14  will not turn over these reams and reams of video evidence

15  to you, at least the confidential parts of it.  So you will

16  still have to deal with Ms. Hernandez as -- for -- to some

17  extent as far as getting access to the confidential

18  discovery.  So it serves a very practical purpose in these

19  January 6th cases.  Do you understand that?

20           THE DEFENDANT:  (Inaudible.)

21           THE COURT:  Okay.  All right.  Anything else about

22  representing yourself that you have any questions about?

23           THE DEFENDANT:  No.

24           THE COURT:  Okay.  Ms. Hernandez, any questions?

25           MS. HERNANDEZ:  No, Your Honor.
```

```
 1              THE COURT:  Okay.  All right.  So now, we're going
 2     to proceed as best we can with the arraignment that we have
 3     to do.  I don't know if you've given that any more thought
 4     since we were last together, Ms. Kelso, but it's something
 5     we have to do.  So I'm going to have my Deputy Clerk read
 6     the superseding indictment and so that you can be arraigned.
 7     It's taking a moment to pull up on the computer.
 8              MS. HERNANDEZ:  I'm sorry, Your Honor.  I did have
 9     a question.
10              THE COURT:  Sure.
11              MS. HERNANDEZ:  Will Ms. Kelso have access to ECF
12     so she can file herself or she would still be filing by
13     emailing to the email address that was given to her last
14     time?
15              THE COURT:  Ms. Kelso, do you want access to ECF?
16              THE DEFENDANT:  Sure.
17              THE COURT:  Okay.  So there's -- if --
18     Ms. Hernandez can help you go on to our local rules.
19     There's certain things that you have to certify that you've
20     read the rules on the website and I think there's a little
21     tutorial.  If you've never done it before, there's a little
22     tutorial that you have to take and assert that you have
23     access to a computer to reliably receive notices of things.
24     So if you provide that assertion, then I'll approve you
25     being granted access to ECF which always makes things go a
```

1      little bit smoother, but it's something you have to check

2      continuously because once you're granted access, notice

3      through ECF is notice to you.  So you can't say, "Oh, I

4      haven't looked there for 30 days and I missed that."  You

5      understand that?

6                  THE DEFENDANT:  Yes.

7                  THE COURT:  Okay.

8                  You ready, Tanya?

9                  THE DEPUTY CLERK:  Yes, sir.

10                 THE COURT:  Okay.  We're going to start the

11     arraignment now.

12                 THE DEPUTY CLERK:  I'm going to share the

13     superseding indictment.

14                 THE COURT:  Okay.

15                 THE DEPUTY CLERK:  Ms. Kelso, in Criminal Action

16     24-233, there was a superseding indictment filed on

17     September 18th, 2024, and in Count 1 -- Count 1 charges you

18     with conspiracy to impede or injure officers, in violation

19     of Title 18 United States Code Section 372; Count 2 -- give

20     me one second -- Count 2 charges you with civil disorder, in

21     violation of Title 18 United States Code Section 231(a)(3);

22     Count 3 charges you with entering and remaining in a

23     restricted building or grounds, in violation of Title 18

24     United States Code Section 1752(a)(1); Count 4 charges you

25     with disorderly and disruptive conduct in a restricted

1    building or grounds, in violation of Title 18 United States

2    Code Section 1752(a)(2); and Count 5 charges you with

3    disorderly conduct in a Capitol building or grounds, in

4    violation of Title 40 United States Code Section

5    5104(e)(2)(D).

6            How do you wish to plead?  And do you waive formal

7    reading of the indictment?

8            THE DEFENDANT:  I'm innocent.

9            THE COURT:  Okay.  So does that mean you plead not

10   guilty to all of the counts, Ms. Kelso?

11           THE DEFENDANT:  Well, apparently, there's not a

12   way for me to say I'm innocent.

13           THE COURT:  Okay.

14           THE DEFENDANT:  I feel like only a guilty man

15   pleads.

16           THE COURT:  Okay.

17           THE DEFENDANT:  So I just don't have a plea to

18   enter, but I will let you do your thing.

19           THE COURT:  Okay.  I will enter a plea of not

20   guilty on all five counts on your behalf.

21           All right.  So --

22           THE DEFENDANT:  (Inaudible) -- do not feel that I

23   have been arraigned.

24           THE COURT:  Okay.  So you're entitled to have the

25   entire superseding indictment read to you -- I'm sure you've

1    already seen that document before -- or you can waive having

2    my Deputy Clerk have to read the -- all 11 pages of it.  Do

3    you want it read to you or do you want -- or to waive your

4    right to have it read to you?

5                THE DEFENDANT:  I guess we can waive it.

6                THE COURT:  Okay.  All right.  So we won't read

7    the entire thing, then.

8                All right.  What -- where do we go from here,

9    Mr. Mariano?

10               MR. MARIANO:  I think we can set a trial date and

11   a motions deadline for the defendant.  The one thing that I

12   want to raise from the previous thread of colloquy: I know,

13   at the end, Your Honor raised the protective order and the

14   fact that, as standby counsel, Ms. Hernandez would still

15   fulfill the role with respect to sensitive and

16   highly-sensitive materials.  I believe Ms. Kelso nodded, but

17   I just wanted to get her understanding on the record.

18               THE COURT:  All right.  I gather that there's not

19   a protective order yet on the -- on -- in this case.  Is

20   that right?

21               MR. MARIANO:  Your Honor, there is a protective

22   order.  It's Docket No. 15.

23               THE COURT:  Okay.  All right.  So Ms. Hernandez

24   will continue to serve as the point of contact on that and

25   the rules of the protective order will continue to apply.

1      So the -- as you know, Ms. Hernandez, some of the

2   materials she can have on her own, but others she cannot,

3   and you will serve as the liaison for those aspects and

4   she'll have to go through you to do that.  I don't know if

5   you've had a pro se January 6th defendant before,

6   Ms. Hernandez, but many of your colleagues have.  So you can

7   get information from others on -- as to how that works.

8      MS. HERNANDEZ:  Yeah.  I don't think it really

9   matters whether it's pro se or not, because the protective

10   order applies to certain items of discovery regardless.

11      THE COURT:  Yeah.

12      MS. HERNANDEZ:  They are videos.  The CC- -- as I

13   understand it, unless the Government waives, the CCTV videos

14   are highly protected.  So I cannot provide a copy of those

15   to Ms. Kelso.  She can view them either in my presence or in

16   the presence of staff.

17      THE COURT:  Okay.

18      MS. HERNANDEZ:  That's my understanding of the

19   protective order.

20      THE COURT:  Okay.  All right.  So I'm not

21   inclined -- given the disadvantage that Ms. Kelso's at, I'm

22   not inclined to set a trial just yet.  I want to make sure

23   that we work out the kinks of getting discovery to her as

24   necessary.  So I'm going to come back in 30 days.

25      Ms. Kelso, do you -- while you work out those

1    kinks in discovery, are you amenable to tolling the Speedy

2    Trial Act?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  So I find that it's in the

5    interests of justice for us all to try to get the -- given

6    that Ms. Kelso is now pro se, to get some of these discovery

7    issues/kinks worked out and we'll come back in 30 days.

8              THE DEFENDANT:  I wouldn't say pro se.  I would

9    say sui juris.

10              THE COURT:  Okay.  So you can use the language

11   with -- you wish, Ms. Kelso, but the Court uses the language

12   that applies here under the law.  So you are a pro se.

13              All right.  What's 30 days, Tanya?

14              THE DEPUTY CLERK:  Everyone available on Tuesday,

15   November 19th, at 11:00 a.m.?

16              THE DEFENDANT:  Yes.

17              MR. MARIANO:  Yes.

18              MS. HERNANDEZ:  Yes.

19              THE COURT:  All right.  And that will be after the

20   election.  So hopefully everyone will have some clarity as

21   to how many trials are likely to take place and I'll have a

22   better idea of my trial schedule.

23              Anything else we need to resolve today?

24              MR. MARIANO:  Not from the Government, Your Honor.

25   Thank you.

1          THE COURT:  Ms. Kelso?

2          THE DEFENDANT:  I still do not feel like I have

3     been arraigned.

4          THE COURT:  Okay.  Under the eyes of the law, you

5     have been arraigned.

6          So -- all right.  Thank you, Ms. Hernandez.

7          Everyone's excused.  So long.

8          THE DEPUTY CLERK:  Thank you, everyone.  This

9     Court is adjourned.

10          (Proceedings concluded at 11:13 a.m.)

11                    * * * * * * * * * * *

12          **CERTIFICATE OF OFFICIAL COURT REPORTER**

13     **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

14     **that the above and foregoing constitutes a true and accurate**

15     **transcript of my stenographic notes and is a full, true and**

16     **complete transcript of the proceedings to the best of my**

17     **ability, dated this 18th day of October 2024.**

18                              /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                               Official Court Reporter
19                             United States Courthouse
                               Room 6722
20                             333 Constitution Avenue, NW
                               Washington, DC 20001
21

22

23

24

25